and admitted in the United States, is eligible to adjust his status to that of Lawful Permanent Resident. *See Exhibit N, INA section 245(a), 8 U.S.C. section 1255(a).* Thus, the respondents' refusal to accept and adjudicate the petition violates the laws of the United States. The proposed deportation of Mr. Damaa also violates the laws of the United States.

43. Under the canons of statutory interpretation, a review of the laws at issue commences with a review of the plain language of statutes involved. *Huges Aircraft Company v. Jacobson*, 525 U.S. 432, 438 (1999) ("[statutory] analysis begins with the ... language of the statute ... and where the statutory language provides a clear answer, it ends there as well.") (*inner citations omitted*)).

44. Where the language of the statue is clear the inquiry ends there. *Id.*

45. It is also necessary to apply "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987).

46. INA section 201(b), 8 U.S.C. section 1151, provides that immigrant visas are immediately available to "immediate relatives" because they "are not subject to the worldwide levels or numerical limitations imposed by INA section 201(a) upon other aliens seeking admission to the US as permanent residents." *A copy of the statute is attached as exhibit N.*

47. Section 201(b)(2)(A)(i), 8 U.S.C. section 1151(b)(2)(A)(i), provides that, "the term 'immediate relatives' means the ... spouses ... of a citizen of the United States ...." *See Exhibit N.*

48. The respondent is the husband of a natural born U.S.C., *see exhibit B,*

11

*marriage certificate; exhibit A, para. 2, affidavit of United States Citizen Wife;* thus, he qualifies as an immediate relative and an immigrant visa is immediately available.

49. INS section 245(a), 8 U.S.C. section 1255(a) (A copy of this statute is attached as Exhibit O) provides:

> the status of an alien who was inspected and admitted or paroled into the United States ... may be adjusted ... to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

50. Thus, under 245(a) 8 U.S.C. section 1255(a), an immediate relative who was admitted to the U.S. after inspection is eligible for LPR status even if they overstay the term of their admission.

51. INA section 245(c)(4), 8 U.S.C. section 1255(c)(4) restricts the eligibility to gain Lawful Permanent Resident status if a person was admitted to the United States under the Visa Waiver Program. However, the restrictions are ***inapplicable*** to immediate relatives – such as Mr. Damaa *See exhibit O*. In this regard, INA Section 245(c)(4), 8 U.S.C. section 1255(c)(4) states (emphasis supplied):

> INA section [245] subsection (a) shall not be applicable to .... an alien (other than ***an immediate relative as defined in section 201 (b)***) who was admitted as a nonimmigrant visitor without a visa under ... [the Visa Waiver Program] ....

52. It is important to note that the exemption for immediate relatives in INA

12

245(c) ***does not contain language*** stating an immediate relative is ineligible to adjust status if they overstayed the 90 day period permitted by Visa Waiver Program (neither does any part of INA section 217, 8 U.S.C. section 1187).

53. Given the detailed language of the statutory scheme, Congress would clearly have included such language had they wanted to override the language of INA section 245(a), 18 U.S.C. 1255(a).

54. Under INA section 245(c), 8 U.S.C. section 1255, immediate relatives are explicitly exempt from the restrictions imposed upon persons who entered pursuant to the Visa Waiver and overstayed.

55. Similarly, although INA section 217, 8 U.S.C. section 1187 states that a person admitted pursuant to the Visa Waiver program waives the right to contest their deportation, the complete statutory scheme that includes INA sections 245(a) and 245(c) 8 U.S.C. section 1255 (a),(c) patently carves out an exception for an immediate relative since they are eligible for Lawful Permanent Resident Status.

56. The government's position that Mr. Damaa is subject to deportation for overstaying – despite that fact that he is the spouse of United States Citizen – ignores the exception carved out by INA section 245(c), 8 U.S.C. section 1255(c) and does not follow the cannons of statutory interpretation that require that "real effect should be given all words it uses." *Myers v. United States*, 272 U.S. 52 (<>).

57. Thus, when INA Sections 201(b), 217, 245(a) and 245(c), 8 U.S.C. sections 1151, 1255, 1187 are considered in conjunction, the statutory scheme clearly allows persons admitted pursuant to the Visa Waiver Program to adjust status as the spouse of a United States Citizen regardless as to whether they overstay the 90 day period

13

permitted under the Visa Waiver Program. Thus, the statutory scheme exempts such the spouse of a U.S.C. from any waiver of rights imposed by the language of INA 217 and provides a defense to any deportation based on the fact that they may be out of status by overstaying the 90 day period permitted under the Visa Waiver Program.

58. The foregoing analysis establishes Mr. Damaa's eligibility for LPR status demonstrates and that he has valid defenses to any action to deport Mr. Damaa. To the extent that the regulations of 8 CFR section 217 are inconsistent with the statutory scheme, they are unconstitutional and violate the laws of the United States.

59. The couple attempted to file an LPR petition with CIS on or about October 29, 2003. *See exhibit A, para. 10, Affidavit of Mrs. Damaa.*

60. CIS refused to accept said documents and refused to adjudicate the petition. *Id.*

61. CIS's refusal to accept and adjudicate the couple's LPR petition violates the laws of the United States, specifically, INA sections 245(a) and 245(c), 8 U.S.C. 1255, which allow the spouse of a United States Citizen to adjust status even if they overstay the terms of their admission under the Visa Waiver Program.

62. Given that Mr. Damaa is eligible to adjust his status to LPR, his detention by CIS and/or ICE violates the laws of the United States, specifically, INA 245(a) and 245(c), 8 U.S.C. section 1255, which allow the spouse of a United States Citizen to adjust status even if they overstay the terms of their admission under the Visa Waiver Program.

63. The Immigration Court, as a division of the Attorney General's office, also has authority under INA section 245(a), 8 U.S.C. section 1255. The common practice at the CIS Boston District Office is that, when an immediate relative is in

14

deportation proceedings, the Immigration Court will schedule "Phantom Master Calendar Hearings" until CIS adjudicates the I-130 Petition for Alien Relative. Thereafter, the Immigration Court will adjudicate the I-485 petition.

64. Thus, the Immigration Court's ruling that it lacked jurisdiction to consider the case violates the laws of the United States.

> *d.     The respondents' proposed summary deportation of Mr. Damaa without the opportunity to contest his removal violates his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution and the Laws.*

65. The United States Constitution provides protections to Mr. Damaa, even if he is determined to be an alien unlawfully present within the United States. *Tkaoru Yamatay v. Fisher (a/k/a The Japanese Immigrant Case)*, 189 U.S. 86, 100-101 (1903) ("Aliens, even aliens whose presence in this Country is unlawful, have long been ... guaranteed due process of law by the Fifth ... Amendment[]"); *Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("we have clearly held that the Fifth Amendment protects [even] aliens whose presence in this country is unlawful ....").

66. As the husband of a United States Citizen who has petitioned for Lawful Permanent Resident status, Mr. Damaa's Due Process rights are even stronger. *Cf. Landon v. Placenia*, 459 U.S. 21, 32 (1932) ("once an alien gains admission to our country and begins to develop ties that go with permanent residence his constitutional status changes accordingly").

67. Also, the respondents' improper refusal to accept the petition and summary deportation of Mr. Damaa implicates the U.S.C. spouses fundamental constitutional rights to marriage and fundamental right to privacy under the First, Fifth,

15

Ninth, and Fourteenth Amendments of the United States Constitution. *See, e.g., Eisenstadt v. Baird*, 405 U.S. 438, 453-454 (1972); *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Skinner v. Oklahoma*, 316 U.S. 535, 541-542 (1942); *Loving v. Virginia*, 388 U.S. 1, 12 (1967); *Roberts v. United States Jaycees*, 468 U.S. 609, 619 (1984).

68. Contrary to the foregoing authorities, the respondents' propose that Mr. Damaa's entry under the Visa Waiver Program precludes him from contesting in any way his deportation from the U.S.

69. Although no precedent in this Circuit directly addresses the government's claim, in *Nose v. United States*, 993 F.2d 75 (9th Cir. 1993), the Ninth Circuit explicitly ruled that the government's position is unconstitutional and that a waiver must be knowing and voluntary and its reasoning holds that a respondent is entitled to judicial review of any waiver.

70. In *Nose*, the Ninth Circuit Court of Appeals ruled that the Due Process Clause of the Fifth Amendment to the United States Constitution requires that, under the Visa Waiver Program, the government must establish that any waiver of the right to contest a deportation was knowing and voluntary.

71. In this regard, *Nose*, 993 F.2d at 11, provides (emphasis added):

> "Generally, 'even aliens who have entered the United States unlawfully are assured the protection[] of the fifth amendment due process clause.' *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1036 (5th Cir. 1982), including the right to a hearing before an immigration judge before being deported. *The Japanese Immigrant Case*, 189 U.S. 86 (1903) (holding that the due process of law forbids the State from 'arbitrarily ... causing an alien who has entered the country, ... although alleged to be illegally here, to be taken into custody and deported without giving him any opportunity to be heard upon the questions involving his right to be and remain in the United States"). Although due process rights may be waived, *see, e.g., Boddie v. Connecticut*, 401 U.S. 371, 378-379 (1971) (holding that 'the hearing required by due process is subject to waiver'),

16

such a waiver must be made knowingly and voluntarily. *See Brewer v. Williams*, 430 U.S. 387, 404 (1977) (defining a waiver as 'an intentional relinquishment or abandonment of a know right or privilege' " (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))). In determining whether a waiver is knowing and voluntary, **we must 'indulge in every reasonable presumption against a waiver**.' " *Id.*

72. *Nose*, sets forth an analysis to determining whether a person has waived such due process rights: a Court must "consider, inter alia, [three] factors: (1) the party's background and experience; (2) the clarity of the written waiver agreement; and (3) whether the party was represented by or consulted with an attorney." 993 F.2d at 10.

73. Mr. Damaa was born in Lebanon and English is not his native language. His English reading skills are very limited. *See exhibit I, Affidavit of Naim K. Damaa, paragraph 5.*

74. Any papers signed were in English, and not in his native language. *Id.*

75. Mr. Damaa did not consult a lawyer about the visa waiver program or any other aspect of the immigration laws of the United States. *Id. at para. 14.*

76. Mr. Damaa did not understand that he was waiving any rights to contest any deportation or removal from the United States. *Id.*

77. The application of the *Nose*[2] three part inquiry the facts of the case at bar demonstrates that Mr. Damaa did not knowingly and voluntarily waived his

---

[2] In *Nose*, the Ninth Circuit concluded that the respondent had waived her right to contest her deportation because "*Nose* was a highly educated person, in addition to receiving her nursing degree, [she] studied English for over two years at a major United States university, and subsequently passed a state English proficiency exam ...., [signed] six ... forms [in English that] indicated [she] waiv[ed] [her] rights to ... a hearing before an Immigration Judge to determine ... deportablility, and ... consulted with an attorney about the [Visa Waiver Program] before she first entered the United States ....". ]. The case at bar is factually inapposite: Mr. Damaa is uneducated, illiterate in English, did not consult an attorney, and did receive or execute any waiver forms in his native language.

17

due process rights to contest his deportation and is entitled to a review of the validity of his alleged waiver.

78. The respondents have denied Mr. Damaa these Constitutional Protections provided by the Due Process Clause of the Fifth Amendment to by refusing to consider the voluntariness of any waiver and by interfering or denying Mr. Damaa's plea to have his Due Process considerations considered by a Judge.

79. The Immigration Judge ruled that she did not have Jurisdiction to consider these Constitutional arguments and that the proper forum for such consideration is in the Federal Courts.

80. Thus, in the case at bar, the respondents have failed to follow the valid precedent of the Federal Courts, the plain language of the statutory scheme, the Constitution of the United States, and have violated Mr. Damaa's Constitutional Rights.

   e. *The detention without the right to judicial review imposed on Mr. Damaa by the respondents violates the laws of the United States and has no basis in the law.*

81. "Bond hearings are separate and apart from deportation hearings … Whether or not bond is required has no bearing on whether a final order of deportation will be entered. *Garnicka v. INS*, 681 F.2d 501, 505-506 (7th Cir. 1982). *See also, INA section 3.19(d) (Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding."). See also, 3.19(d)*

18

*("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apa t from, and shall form no part of, any deportation or removal hearing or proceeding.")*.

82. The statutory scheme does not state that a person detained for overstaying the term of admission under the Visa Waiver Program is subject to mandatory detention without the benefit of a bond hearing. *See INA section 217, 8 U.S.C. section 1187*. In fact, section 217 is silent on the issue of bond.

83. Where the language of the statue is clear the inquiry ends there. *See Huges Aircraft Company v. Jacobson*, ___ U.S. ___ (1999) ("[statutory] analysis begins with the ... language of the statute .... And where the statutory language provides a clear answer, it ends there as well.") (*inner citations omitted*)).

84. 8 CFR 3.19 governs the bond procedures of the ICE, CIS, and the Immigration Court.

85. 8 C.F.R. section 3.19 provides: "... an alien ... may be considered for release from custody if lawfully admitted. Such an alien must first demonstrate, by clear and convincing evidence, that release would not pose a danger to the safety of other persons or property ....[and] that the alien is likely to appear for any scheduled proceeding ...."

86. Mr. Damaa has never been accused of, or committed, any crime, he is married and resides with his wife in Medford, Massachusetts, he has resided in Massachusetts since the year 2000, his wife is a life-long resident of this

19

Commonwealth, she has an important position with Wyeth Pharmaceuticals in which she earns a handsome annual salary of over $52,000, all his ties in the United States are within the Commonwealth of Massachusetts, he was taken into custody when he voluntarily went the JFK Building to attempt to remedy his out-status situation, and he is eligible to adjust his status to LPR as the spouse of a United States Citizen;

87. Additionally, his admission to the U.S. pursuant to the Visa Waiver Program indicates that he "has been determined not to represent a threat to the welfare, health, safety, or security of the United States." *See INA Section 217(a)(6), 8 U.S.C. section 1187(a)(6)*.

88. Thus, Mr. Damaa presents no danger that he will not appear in Court and his release does not pose a danger to the safety of other persons or the community.

89. Accordingly, CIS and ICE violated the laws of the United States and their own Agency Regulations when they denied and detained Mr. Damaa without the opportunity for bond, or a bond hearing.

90. The Immigration Court also violated the laws of the United States and the Agency Regulations when it ruled it did not have jurisdiction to consider a bond because Mr. Damaa overstayed the time permitted under the Visa Waiver Program.

91. Also, 8 CFR section 236.1(d) provides, in relevant part: "(1) Application to immigration judge. After an initial custody determination by the district direcgtor, including the setting of bond, the respondent may ... request

20

amelioration of the conditions under which he or she may be released. ....
The immigration judge is authorized to exercise the authority in section 236 of the act to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in 3.19 of this chapter.

92. 8 CFR 3.19(a) also states that "Custody and bond determinations made by the Service pursuant to 8 C.F.R. part 236 may be reviewed by an Immigration Judge.

93. Thus, based on the facts and analysis of the preceding paragraphs, it is respectfully submitted that the respondents violated their own Agency regulations, the laws of the Untied States and the United States Constitution when the CIS and ICE refused a bond hearing claimed that a bond hearing is precluded to persons who overstay after being admitted under the Visa Waiver program, and violated the laws of the U.S. and the Constitution when it ruled it had no jurisdiction to consider Mr. Dmaa's request for bond.

94. Furthermore, under the foregoing analyses, it is respectfully submitted that the respondent is eligible for release on bond during the consideration of the I-130 by the Vermont Service Center and, thereafter, until an adjustment of status is adjudicated.

  *f. The summary deportation of Mr. Damaa violates the Mrs. Damaa's constitutional rights to marriage and privacy.*

95. The summary deportation proposed by the Department of Homeland Security violates and/or implicates the U.S.C. spouses fundamental constitutional

rights to marriage and fundamental right to privacy under the First, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution. *See, e.g., Eisenstadt v. Baird*, 405 U.S. 438, 453-454 (1972); *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Skinner v. Oklahoma*, 316 U.S. 535, 541-542 (1942); *Loving v. Virginia*, 388 U.S. 1, 12 (1967); *Roberts v. United States Jaycees*, 468 U.S. 609, 619 (1984).

96. In *Griswold*, the Supreme Court stated that the marriage relationship lies "within the zone of privacy created by several fundamental constitutional guarantees." Laws that "slic[e] deeply into the family" must receive careful scrutiny by the Courts because " ' Freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause.' " *Id.*

97. Similarly, in *Roberts v. Unites States Jaycees*, 468 U.S. 609, 617-618 (1984), the Supreme Court reasoned that the formation and preservation of certain types of "highly personal relationships" is necessary to secure individual liberty and suggested that marriage is such a relationship that must be protected from unwarranted state interference.

98. The fact that INA section 245(c), 8 USC section 1255(c) includes an exception for, inter alia, spouses of United States Citizen's suggests deference to such fundamental rights.

99. The government's proposed summary deportation is not related to the health, welfare, security or safety of the United States or its residents. Thus, the government's proposed summary deportation is not related to any compelling

22

state interest nor is it rationally related to any legitimate government interest. Instead, it is simply arbitrary and capricious.

100. Thus, the summary deportation proposed by the government is unconstitutional and violates the statutory scheme. *See infra, section IV(a).*

101. The summary deportation is inconsistent with such rights and violates these rights. Thus, INA section 217, 8 U.S.C. section 1187, facially and as applied by the government to the case at bar, is unconstitutional.

    g. The respondents' violation of their own regulations and congressional statutes violates the Administrative Procedures Act, 5 U.S.C. section 701.

102. The respondents' failure to follow the statutory and regulatory law in the case at bar violates the Administrative Procedures Act ("the APA"), 5 U.S.C. section 701, et seq. *Cf. Jean v. Nelson*, 727 F.2d 957 (11th Cir. 1984), *aff'd* 472 U.S. 856 (1985); *Haitian Centers Council, Inc. v. Sale*, 923 F.Supp. 1028 (E.D.N.Y 1993).

102. As set forth in preceding sections of this memorandum, these violations include the refusal to accept and adjudicate the petition; the denial of a bond hearing and custody re-determination, the denial of the opportunity to contest his deportation, and the denial of an opportunity to establish that any waiver of rights was not knowing and voluntary.

    h. *Injunctive relief is necessary to prevent irreparable harm to the Damaa's*

103. The standard of review in evaluating a request for a TRO or a preliminary injunction requires plaintiffs to establish: (1) a substantial likelihood they will prevail on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) greater injustice to the moving party if the injunction is denied than harm caused to the non-moving party if the injunction is granted; and (4) no substantial disservice to the public interest. *Levi Strauss & Co. v. Sunrise International Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995).

104. An injunction is especially appropriate when, as here, it would preserve the status quo. *Northeaster Florida Chapter of Assoc. of General Contractors v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990) ("The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.").

105. The analysis set forth in this memorandum demonstrates that the petitioner and plaintiff have a great likelihood of success on the merits and that genuine and substantial constitutional questions are at issue.

106. If injunctive relief is not granted, Mr. Damaa will be wrongfully deported forthwith and the couple will suffer irreparable harm by being separated for a substantial period of time and, given their ages, their ability to start a family may be compromised. Mr. Damaa's ability to prosecute this matter will also be compromised by his absence from this country. The injunction is also necessary to preserve the status quo with regard to Mr. Damaa's deportation.

107. If the injunction is granted, it is respectfully submitted that the respondents will suffer no harm or prejudice – Mr. Damaa will still be available for deportation if they succeed in this action.

108. No disservice will occur to the public interest if the injunction is granted. Conversely, the public interest is served by an injunction by protecting a violation of the petitioner's and plaintiff's rights.

### i. *A writ of Mandamus is necessary to protect the rights of Mr. and Mrs. Damaa.*

109. A party requesting a mandamus must establish: (1) a clear and certain claim; (2) that the duty owned is ministerial, plainly prescribed, and free from doubt; and (3) that no other adequate remedy is available. *Yu Brown*, 36 F.Supp. 2d 922, 933-934 (D. New Mexico 1999).

110. 5 U.S.C. section 555(b) requires that an agency, such as CIS, must conclude matters within a reasonable time.

111. Mr. and Mrs. Damaa have a clear and certain claim to have their petition accepted and adjudicated. *See section, IV(c), supra.*

112. The CIS does not have discretion as to whether to adjudicate an adjustment of status application. *Bartolini v. Ashcroft*, 226 F.Supp.2d 350, n. 3 (D. Conn. 2002). This is plainly a ministerial duty.

113. Only the CIS can accept and adjudicate such a petition. Accordingly, no other adequate remedy exists.

114. Thus, the foregoing analysis demonstrates that a writ of mandamus is necessary to enforce Mr. and Mrs. Damaa's rights.

  j. *Declaratory Relief is necessary to remedy the violations of the law committed by the respondents.*

114. The facts, circumstances and authorities set forth in this memorandum demonstrate that declaratory judgment is necessary to remedy the unconstitutional and unlawful actions of the respondents.

  k. *Attorney's fees and Costs Pursuant to 28 U.S.C. section 2412.*

115. An award of attorney's fees and costs is just in this matter because the position of the government was and is not reasonable and substantially justified under relevant statutory scheme and the United States Constituton.

V.  *Conclusion.*

WHEREFORE, the respondent moves for the following relief:

1. For the Court to hand down an order enjoining the defendants from deporting Mr. Damaa from the U.S. or removing Mr. Damaa from Boston, Massachusetts;

2. For the Court to hand down an order Mr. Damaa releasing from detention or, in the alternative, to convene a Bond Hearing or order the Immigration Judge to Convene a Bond hearing;

3. For the Court to hand down a writ of mandamus directing CIS to accept and adjudicate Mr. and Mrs. Damaa's applications for Mr. Damaa's status as a Lawful Permanent Resident of the United States.

26

4. For the Court to declaure:

   b. that any removal of Mr. Damaa will violate the statutory scheme set forth in INA section 245(a), 8 U.S.C. 1225;

   c. that any summary removal of Mr. Damaa will violate the Constitution and laws of the United States;

   d. that laws of the United States require the respondents to accept and adjudicate the Damaas' petition;

   e. that Mr. Damaa is entitle to judicial review of the bond and custody determinations of the ICE and/or CIS;

   f. that Mr. Damaa's alleged waiver of rights under the Visa Waiver Program is subject to judicial review to determine whether it was voluntary and knowingly made.

Respectfully submitted,
Naim K. DAMAA,
By his attorney,

*Jonathan S. Sales*
Jonathan S. Sales
21 School Street
Boston, MA 02108
(617) 723-6162

## CERTIFICATE OF SERVICE

I, Jonathan S. Sales, certify I have served a true copy of this pleading ~~today~~ and its supporting exhibits to the:

**Office of District Counsel**
**Department of Homeland Security**
**JFK Federal Building, Room 425**
**15 New Sudbury Street**
**Boston, MA 02203**

The CIS, JFK Building, Boston, MA 02203
The ICE, JFK Building, Boston, MA 02203
The U.S. Atty, 9th Floor, Fed Courthouse, South Boston

27

in hand service, on this 2⁴ᵗʰ day of November 2003.

*Jonathan S. Sales*